W. S. HADDAWAY, Respondent, v. R. J. POST *et al.*, Appellants.

### St. Louis Court of Appeals, April 2, 1889.

Contract : INTERPRETATION : EVIDENCE.   When on the face of a paper containing a written contract, upon which the suit is founded, there appears a memorandum referring to certain interpretations, explanations or conditions concerning the matters of contract, which are written or printed on the other side of the paper, and the contract is offered in evidence by the plaintiff, the defendant is entitled, on his demand, to have such interpretations, etc., read in connection with the contract, and it is error for the court to exclude them from the evidence.

*Appeal from the St. Louis City Circuit Court.*—HON. GEORGE W. LUBKE, Judge.

REVERSED AND REMANDED.

*Smith & Harrison*, for the appellants.

The court below erred in excluding from evidence the foot note and endorsement upon the instrument of writing sued on. That which followed the signatures was as much a part of the contract as that which went before. The endorsement related to, and was part of, the subject-matter of the writing, was connected therewith by the foot note, and the whole taken together was necessary to make the entire contract. Plaintiff's recovery was had upon the part, not upon the whole contract, and defendants were prevented, by the action of the court, from making their defense. *Railroad v. Levy*, 17 Mo. App. 504, 505; *Williams v. Handley*, 3 Bibb. 10; *Bank v. Ewing*, 78 Ky. 264; *Costelo v. Crowell*, 127 Mass. 293; 1 Dan. Neg. Inst. ( 3 Ed.) secs.

149-154, and cases cited; *Wait v. Pomeroy*, 20 Mich. 425; *Wheelock v. Freeman*, 13 Pick. 165; *Elmore v. Higgins*, 20 Iowa, 250; *State v. Stratton*, 27 Iowa, 420. The meaning and effect of the instrument sued on should have been collected by the court below from the "eight corners," and the instructions given for plaintiff, which are based upon a partial reading and construction of the instrument, are, therefore, erroneous. All parts of the contract should have been considered in order to reach the intent of the parties. The canon of construction which we have invoked in support of our contention that the foot note and endorsement in question are a part of the contract is, that, in construing a written instrument, the court will look to the entire document. It is immaterial on what part of the paper the name be found, if it be inserted in such manner as to have the effect of authenticating the instrument. *Penniman v. Hartshorn*, 13 Mass. 87; 2 Kents' Com. (13 Ed.) sec. 511, and cases cited; *Merrick v. Clason*, 12 Johns. 102, 106; 3 Pars. Con. (7 Ed.) 6; Story, Sales, sec. 266. The endorsement upon the instrument sued on is not in conflict with the writing, and the instrument should be construed so that the whole thereof may stand, and effect be given to every part thereof. This is well settled. The endorsement need not be signed and may be in print as well as in writing. It was there when the contract was signed and that is all that is necessary. *Bank v. Ewing*, 78 Ky. 204; *Railroad v. Levy*, 17 Mo. App. 501.

*John K. Tiffany* and *W. E. Fisse*, for the respondent.

The rule that everything written upon a promissory note or negotiable paper is to be construed as part of the note, laid down in *Railroad v. Levy*, 17 Mo. App. 504-5, and the other cases cited by the appellants, is peculiar to such paper; and no case has been cited by appellant where it has been applied to a contract of sale. The effect of the rule is only to control the negotiability

of notes.    The case of *Williams v. Handley*, 3 Bibb. 10, is not in point as the endorsement in that case was written on the deed at the time of its execution, and it was held that if written afterwards and not sealed, it would have formed no part of the deed.    But the rule invoked, though applicable to negotiable paper, is neither supported by all the citations of appellants, nor does it always act to the advantage of the maker of the paper.    1 Dan. Neg. Inst. (3 Ed.) secs. 153, 154, 155. The rule applicable to printed conditions of sale is that they are binding on the buyer only when it appears that they were brought to his notice.    Story, Sales, sec. 463, and cases cited ; *Murley v. McDermott*, 3 Nev. & P. 356.    The more ordinary instances of the printed forms, such as that upon which this contract was written, are those used by common carriers to limit their liability. Here the rule is that the conditions do not bind the purchaser of a ticket or the receiver of a bill of lading or receipt, unless actual knowledge or implied notice from well established customs, having the effect of law, is brought home to him. Hutch. Car., sec. 582 ; Hutch. Car., sec. 245 ; *Brown v. Railroad*, 9 Cush. 99 ; *Express Co. v. Cook*, 44 Ala. 468 ; *Express Co. v. Armstead*, 50 Ala. 350 ; *Gott v. Dinsmore*, 111 Mass. 45 ; *Blossom v. Dodd*, 43 N. Y. 264 ; *Belger v. Dinsmore*, 51 Barb. 69.    But if the consignor accepts the receipt with knowledge of its contents, these circumstances constitute a limitation to the contract.    *Hopkins v. Westcott*, 6 Blatchf. 64 ; *McMahon v. Macy*, 51 N. Y. 166 ; *Kirkland v. Dinsmore*, 62 N. Y. 171 ; *Huntington v. Dinsmore*, 6 Thomp. & Cook ( N. Y.) 195 ; *Woodruff v. Sherrard*, 16 N. Y. 322 ; *Tibel v. Livingston*, 64 Barb. 172 ; *Rawson v. Railroad*, 48 N. Y. 212 ; *Titlebronsi v. Railroad*, 55 Me. 462.    In the construction of a contract where part is printed and part written and the provisions are contradictory, it is a settled rule that the written portion must be held to contain the intention of the parties rather than the printed portion prepared for

ordinary occasions. *Robertson v. French*, 4 East, 130, 136 ; *Russell v. Bender*, 51 Mich. 78 ; *Railroad v. Gourley*, 99 Pa. St. 71 ; *Clark v. Woodruff*, 83 N. Y. 518. And this rule is applied to carriers, insurance companies, etc., that use printed blanks. *Express Co. v. Pinckney*, 29 Ill. 392, 410 ; *Ins. Co. v. Bruner*, 23 Penn. St. 50 ; *Hernandez v. Sun*, 6 Blatchf. 317 ; *Chadsey v. Guion*, 97 N. Y. 333.

THOMPSON, J., delivered the opinion of the court.

This action was commenced before a justice of the peace, to recover damages for the breach of a contract, whereby the defendant undertook to furnish anthracite coal to the plaintiff, as hereafter stated. Two off-sets were pleaded by the defendants, which it is not necessary to notice, because no question is raised concerning them.

On trial anew in the circuit court the verdict of the jury disposed of the issues on the complaint and upon each of the off-sets, and awarded a balance to the plaintiff, for which judgment was entered. From this judgment the defendant appeals.

It appeared in evidence that the plaintiff was a coal dealer in south St. Louis, commonly called Carondelet ; that an assistant quartermaster of the United States army advertised for proposals for furnishing hard and soft coal to the garrison at Jefferson. Barracks ; that the plaintiff, desiring to bid for the contract in conformity with this advertisement, went to the defendants and negotiated with them a contract whereby they agreed, in case he should be the successful bidder, to furnish him all the anthracite coal at the prices and under the conditions hereafter set out in the contract itself. The plaintiff became the successful bidder, and the contract was drawn up on one of the printed blanks used by the defendants in their coal contracts, and was signed by both parties. The written portion of the contract as thus signed was as follows :

"St. Louis, April 7, 1886..

"We propose to furnish to W. S. Haddaway for government contract at Jefferson Barracks anthracite coal in such quantities as are set forth in government proposal.

"Chestnut and stove f. o. b., E. St. Louis, in car lots at $5.85 per ton. Egg f. o. b., E. St. Louis in car lots $5.60 per ton, such prices to hold for the period of one year from the time of letting of said contract, the said W. S. Haddaway binding himself to purchase all anthracite coal for said contract from us.

"Post & Hart.

"W. S. Haddaway."

Underneath the signatures were the following words, printed in plain letters: "Prices named are subject to conditions on the back of this letter." On the back of the paper was the following printed matter:

"TERMS CASH."

"1. The prices named in this letter are for coal to be shipped direct from the mines. When ordered shipped from our yards there will be an additional charge for loading.

"2. Coal will in all cases be sold at invoice weights, as weighed and way-billed at the place of shipment.

"3. Cars are required to be unloaded in accordance with the rules and regulations of the railroads, and demurrage will be charged for detention.

"4. Coal shipped on board cars at the mines will be thereafter, in all respects, at the risk of the purchaser.

"5. While every effort will be made for the prompt and satisfactory delivery of all orders, we will not be responsible for the loss of coal *en route*, or for damages sustained in consequence of delays in transportation, transfers, accidents, strikes among employes of coal or transportation companies, or for any other cause beyond our control.

"Prices named in this letter are not guaranteed, till orders have been received and accepted."

The evidence showed, and this is not disputed, that the defendants failed to comply with their contract by furnishing the anthracite coal to the plaintiff as fast as required by him to fill his contract with the government. The excuse which the defendants set up for this failure is founded on the fifth paragraph of the printed matter on the back of the paper on which the contract was written. Against the objections of the defendants, the court allowed the plaintiff to read to the jury the written portion of the paper, without requiring him to read the printed portion, and afterwards excluded the printed portion when offered in evidence by the defendants. Against the ruling of the circuit court, the defendants appeal to the rule that in interpreting a written contract it is to be read by its "four corners," as it is sometimes said, where the effect is to include some portion *on its face* outside of the signatures ; or by its "eight corners," as it is sometimes said, where the effect is to turn it over and include in it something endorsed *on its back* which is also outside of its signature. This principle has been chiefly applied with reference to negotiable instruments, as will be seen by the following cases, all of which were cases of that character : *Farmers' Bank v. Ewing*, 78 Ky. 264; s. c., 39 Am. Rep. 231; *Polo Man. Co. v. Parr*, 8 Neb. 379 ; s. c., 30 Am. Rep. 830 ; *State v. Stratton*, 27 Ia. 420 ; s. c., 1 Am. Rep. 282 ; *Costelo v. Crowell*, 127 Mass. 293 ; s. c., 34 Am. Rep. 367 ; *Wait v. Pomeroy*, 20 Mich. 425 ; s. c., 4 Am. Rep. 395 ; *Wheelock v. Freeman*, 13 Pick. [Mass.] 165 ; s. c., 23 Am. Dec. 674 ; *Heywood v. Perrin*, 10 Pick. [Mass.] 228 ; s. c., 20 Am. Dec. 518 ; *Tuckerman v. Hartwell*, 3 Greenl. [Me.] 147 ; s. c., 14 Am. Dec. 225. The same principle, in respect of memoranda written on negotiable instruments outside of the signatures, has been ruled in many other cases, as is shown by the editor's

note to the case last cited. 14 Am. Dec. 232. In *Missouri Pacific Ry. Co. v. Levy*, 17 Mo. App. 501, this principle was applied with respect to an endorsement on a promissory note respecting the consideration of the note. The principle has been applied with such strictness that if matter so added to a negotiable instrument outside of the signatures is cut off, it avoids the instrument (*Wait v. Pomeroy*, 20 Mich. 425) ; and if it is done with felonious intent it is indictable as a forgery. *State v. Stratton, supra.*

The learned counsel for the plaintiff seeks to avoid the application of this principle to the present case on several grounds. One of these is that the cases in which the principle was asserted were cases of negotiable instruments. But we apprehend that counsel is in error in supposing that the principle is confined to negotiable instruments, although it may, of course, have a different operation when applied to a negotiable instrument from that which it will have when ap plied to another kind of contract. In the case of *Williams v. Handley*, 3 Bibb. [Ky.] 10, a case which has been much cited in support of the rule, the instrument was a deed, and not a negotiable instrument. There can, in the nature of things, be no reason for restricting the operation of the principle to one kind of written contract and denying its operation in respect of another kind of written contract.

Another ground on which we are asked to deny the operation of the rule in this case is that, in the cases cited in support of the rule, the rule has been applied in respect of *written* endorsements and not in respect of printed endorsements ; and a class of cases relating to the contracts made between common carriers and shippers is cited to show that the rule would not be applicable to matter printed upon contracts. We apprehend that there is no general rule, or rather no exception to the general rule, which will exclude printed matter from the

operation of the rule. The cases which arise upon contracts made with public carriers are scarcely applicable because such carriers are acting in the discharge of a duty imposed upon them by public law; their contracts do not hence stand on the precise footing of contracts between two private parties who are freely at liberty to make any contract they choose; but the courts exhibit a tendency so far as possible to prevent them from relieving themselves by printed stipulations in contracts with shippers from the liability which the law imposes upon them; and accordingly it is a well understood rule that the burden is upon the carrier to show that a knowledge of the contents of the printed matter was brought home to the shipper. But we think it would be to use a misleading analogy if we were to endeavor to extract from what the courts have decided with reference to contracts between carriers and shippers a rule for the government of such a case as the one now before us. In the case of *Farmers' Bank v. Ewing*, 78 Ky. 264; s. c., 39 Am. Rep. 231, the matter which was held to be a part of the contract was matter printed upon the back of a promissory note. That case was cited with approval by the Kansas City court of appeals in *Missouri Pacific Ry. Co. v. Levy*, 17 Mo. App. 501, 505. If it was well decided—and we think it was—it shows that the operation of the rule cannot be restrained so as to exclude merely printed matter. See also *Penniman v. Hartshorn*, 13 Mass. 91; *Merirtt v. Clason*, 12 Johns, 106; *Platt v. Smith*, 14 Johns, 368; *Reed v. Drake*, 7 Wend. 345; 2 Kent Com. 511.

A third ground on which it is reasoned that this case ought to be taken out of the general rule above stated is, that it is a principle resorted to in the interpretation of contracts which are partly in writing and partly in print, that where a repugnancy exists between the printed and the written matter, the written portion must control. This is undoubtedly the rule, and this

rule finds frequent application in the interpretation of policies of insurance. We have more difficulty in dealing with this view of the case than with any other. We deal with the question in this aspect only as regards the fifth clause printed upon the back of the contract, because the defendants do not seek to defend under any other clause. At first blush it does seem that there is a repugnancy between the written portion of the contract and this fifth clause. By the written portion the defendants agree to furnish to the plaintiff, for a government contract, anthracite coal in such quantities as are set forth in a government proposal. This charges them with knowledge of the purpose of the contract, and, so far as material, incorporates the government proposal into this contract. It shows that they knew that, under the terms of the government contract, the plaintiff would be obliged to furnish to the government a certain definite quantity of coal, which might be increased or diminished to a certain extent, under the terms of that contract, in the discretion of the contracting officer of the government. On the other hand, in the concluding portion of the written part of the contract the plaintiff binds himself to purchase all anthracite coal for the government contract from the defendants. This seems to be entirely repugnant to the idea that they can excuse themselves from delivering the amount which the plaintiff may require to fill the government contract, by reason of strikes or the causes mentioned in the fifth clause printed on the back of the paper. But on the other hand, it may be said that it will be just as necessary for them to have protection against the liability which they might otherwise incur by reason of the circumstances mentioned in this fifth clause, in this case as in any other case where they should engage to furnish anthracite coal deliverable on the cars. Of course the plaintiff's obligation to purchase

from them all the coal necessary to fill the government contract would be discharged whenever they should not be in a position to deliver it to him ; so that, in working out the contract according to the terms of the written and printed matter taken together there, would not necessarily be any difficulty.

Moreover, it is to be said that this contract was made by business men with their eyes open. When the plaintiff put his name to it he saw that it was drawn upon a paper which had printed matter upon it, and his attention was called to the printed matter by words on the face of the contract printed in conspicuous type. There is no reason founded in public policy, such as obtains in the case of contracts between carrier and shipper, where the parties stand on an unequal footing, and where one is, so to speak, at the mercy of the other,—why this contract should not be interpreted by ordinary rules. It must, we think, be assumed that, in using this blank form on which to draw their contract, the parties intended that the printed matter should form a part of it. Such is the principle of the cases cited, and we see no reason why this case should be taken out of the rule.

This view disposes of this appeal so far as to render it unnecessary to notice the other assignments of error ; for they relate to rulings which sprang out of this ruling, and which will hence not be made on another trial.

For the error of excluding the printed matter of this contract from evidence, the judgment will be reversed and the cause remanded. All the judges concur.